# Exhibit "A"



**null / ALL**
**Transmittal Number: 33069594**
**Date Processed: 01/12/2026**

# Notice of Service of Process

| Primary Contact: | Tracy Adair
AMERICAN AIRLINES, INC.
1 Skyview Dr
Md 8B503
Fort Worth, TX 76155-1801 |
| --- | --- |

| | |
| --- | --- |
| **Entity:** | American Airlines, Inc.
Entity ID Number  4333094 |
| **Entity Served:** | American Airlines, Inc. |
| **Title of Action:** | Frontier Airlines, Inc. vs. American Airlines, Inc. |
| **Matter Name/ID:** | Frontier Airlines, Inc. vs. American Airlines, Inc. (18450546) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Property |
| **Court/Agency:** | Miami-Dade County Circuit Court, FL |
| **Case/Reference No:** | 2025-025232-CA-01 |
| **Jurisdiction Served:** | Florida |
| **Date Served on CSC:** | 01/12/2026 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Sender Information:** | Shutts & Bowen LLP
305-347-7342 |

**Notes:** The document matches the original document as received.

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   l   sop@cscglobal.com

Filing # 239198447 E-Filed 01/09/2026 04:04:51 PM

WR258
1-12-26
12pm

IN THE CIRCUIT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO. 2025-025232-CA-01

FRONTIER AIRLINES, INC.,

    Plaintiff,

v.

AMERICAN AIRLINES, INC.,

    Defendant.

_____/

## ALIAS SUMMONS

THE STATE OF FLORIDA:
To Each Sheriff of the State:

    YOU ARE COMMANDED to serve this Summons, Civil Cover Sheet and Plaintiff's Complaint filed in this action on Defendant:

> **AMERICAN AIRLINES, INC.**
> **c/o Corporation Service Company**
> **1201 Hays Street**
> **Tallahassee, FL 32301-2525**

    Each defendant is required to serve written defense to the complaint on Plaintiff's attorney, whose name and address is:

> **Aliette D. Rodz, Esq.**
> **SHUTTS & BOWEN, LLP**
> **200 S. Biscayne Blvd., Suite 4100**
> **Miami, Florida 33121**

## IMPORTANT

    A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property

*Alias Summons -- American Airlines, Inc.*
Page 2

may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

Plaintiff's Attorney:

Aliette D. Rodz, Esq.
Giancarlo Cueto, Esq.
Shutt & Bowen, LLP
200 S. Biscayne Blvd., Suite4100
Miami, Florida 33131
305-358-6300
305-347-7342
Email: arodz@shutts.com
gcueto@shutts.com
IALPG_Service@shutts.com                                    1/12/2026


**WITNESS** my hand and seal of this Court on the _____ day of _____, 2026.


                                        CLERK OF COURT
                                        Juan Fernandez-Barquin, Esq.
                                        Clerk of Court and Comptroller

                                        By:_____38084
                                              Deputy Clerk

*Alias Summons – American Airlines, Inc.*
Page 3

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**If you are person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355, Email: ADA@jud11.flcourts.org at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711. .**

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you.

Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your writ-ten response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tri-bunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su de-fensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona

*Alias Summons – American Airlines, Inc.*
Page 4

denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecu-tifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dos-sier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egale-ment, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre re-ponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

Filing # 238355815 E-Filed 12/23/2025 07:48:37 PM

**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.    CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE ELEVENTH  JUDICIAL CIRCUIT,
IN AND FOR MIAMI-DADE  COUNTY, FLORIDA

FRONTIER AIRLINES, INC.
Plaintiff                                                    Case # _____
                                                              Judge _____

vs.
AMERICAN AIRLINES, INC.
Defendant

### II.    AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐ $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☒ over $100,000.00

### III.    TYPE OF CASE    (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

## CIRCUIT CIVIL

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☒ Negligence—other
    ☐ Business governance
    ☐ Business torts
    ☐ Environmental/Toxic tort
    ☐ Third party indemnification
    ☐ Construction defect
    ☐ Mass tort
    ☐ Negligent security
    ☐ Nursing home negligence
    ☐ Premises liability—commercial
    ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐ Commercial foreclosure
    ☐ Homestead residential foreclosure
    ☐ Non-homestead residential foreclosure
    ☐ Other real property actions

☐ Professional malpractice
    ☐ Malpractice—business
    ☐ Malpractice—medical
    ☐ Malpractice—other professional
☐ Other
    ☐ Antitrust/Trade regulation
    ☐ Business transactions
    ☐ Constitutional challenge—statute or ordinance
    ☐ Constitutional challenge—proposed amendment
    ☐ Corporate trusts
    ☐ Discrimination—employment or other
    ☐ Insurance claims
    ☐ Intellectual property
    ☐ Libel/Slander
    ☐ Shareholder derivative action
    ☐ Securities litigation
    ☐ Trade secrets
    ☐ Trust litigation

## COUNTY CIVIL

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.    REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.    NUMBER OF CAUSES OF ACTION:** [  ]
(Specify)

   3

**VI.    IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.    HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.    IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

**IX.    DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ Aliette DelPozo Rodz Esq    Fla. Bar # 173592
    Attorney or party           (Bar # if attorney)

Aliette DelPozo Rodz Esq          12/24/2025
(type or print name)        Date

Filing # 238355815 E-Filed 12/23/2025 07:48:37 PM

IN THE CIRCUIT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO. _____

FRONTIER AIRLINES, INC.,

      Plaintiff,

v.

AMERICAN AIRLINES, INC.,

      Defendant.

_____/

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff, FRONTIER AIRLINES, INC. ("Frontier"), by and through undersigned counsel, hereby files this Complaint against Defendant, AMERICAN AIRLINES, INC. ("American"), and alleges as follows:

## INTRODUCTION

This is an action for damages arising from Defendant American's ramp and aircraft pushback operations at Miami International Airport. On March 7, 2024, American's aircraft executed a non-compliant pushback maneuver, entered a clearly marked aircraft buffer zone, and collided with Plaintiff Frontier's parked and stationary aircraft. The resulting impact caused severe damage to Frontier's aircraft rendering it unusable for approximately six months and forcing Frontier to incur substantial damages. Frontier and American settled a portion of the damages. Frontier brings this action to recover the outstanding damages caused by American's failure to conduct safe and compliant ramp operations and to hold American accountable for the harm caused by its conduct at Miami International Airport.

## PARTIES, JURISDICTION, AND VENUE

1.      This is an action for damages in excess of $50,000.00, exclusive of interest, costs and attorneys' fees, and is within the jurisdiction of this Court.

2.      Plaintiff, FRONTIER AIRLINES, INC., is a corporation organized and existing under the laws of the State of Colorado, with its principal place of business located at 4545 Airport Way, Denver CO 80239.

3.      Defendant, AMERICAN AIRLINES, INC., is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1 Skyview Drive, Fort Worth, TX 76155.

4.      This Court has jurisdiction over this matter as the incident giving rise to this action occurred in Miami-Dade County, Florida.

5.      Venue is proper in Miami-Dade County, Florida in that the causes of action alleged herein accrued in this County.

6.      Frontier has retained the undersigned attorneys to represent it in the prosecution of this action, and is obligated to pay its attorneys their reasonable fees and expenses.

## FACTUAL BACKGROUND

7.      On March 7, 2024, at approximately 20:25 EST, an incident occurred at Miami International Airport (MIA) involving a Boeing 777-300 operated by American Airlines, Flight Number 929, bearing FAA registration number N736AT ("American Aircraft"), and an Airbus A321NEO operated by Frontier Airlines, Flight Number 2675, bearing FAA registration number N630FR ("Frontier Aircraft").

8.      At all material times, Frontier was the lawful lessee, operator, and party in exclusive possession and control of the Frontier Aircraft.

*Plaintiff's Complaint for Damages and Demand for Jury Trial*
Page 3

9.      At all material times, American was the operator of the American Aircraft.

10.     At the time of the incident, the American Aircraft was positioned at Gate E6 at MIA and was cleared to push back from the gate.

11.     At the same time, the Frontier Aircraft was parked across the alley at Gate F9 and was unoccupied due to a ground delay program.

12.     The Frontier Aircraft was properly parked, secured, and positioned entirely within its designated gate and safety buffer zone, which was clearly marked on the ramp.

13.     During the pushback maneuver, the American Aircraft executed an out-of-compliance pushback, causing the American Aircraft to encroach into the Frontier Aircraft's buffer zone.

14.     As a direct result of the improper pushback maneuver, the American Aircraft collided with the vertical stabilizer of the Frontier Aircraft.

15.     Photographs of the collision and resulting physical damage are below:





16.   The collision caused significant structural damage to the Frontier Aircraft's vertical stabilizer, as depicted in the photographs above.

17.   Following inspection and evaluation by Airbus, the manufacturer of the Frontier Aircraft, it was determined that the damaged vertical stabilizer was not repairable.

18.   The damaged vertical stabilizer was removed and replaced with a new unit, which was subsequently painted and decaled to match the Frontier Aircraft's specifications.

19.   As a result of the collision and resulting damage, the Frontier Aircraft was rendered out of service for approximately one hundred eighty (180) days, from March 7, 2024 through and including September 4, 2024.

20.   As a direct and proximate result of American's conduct, Frontier incurred substantial damages, including repair costs, loss of use of the Frontier Aircraft, lost profits, and other operational and consequential damages.

*Plaintiff's Complaint for Damages and Demand for Jury Trial*
Page 5

21.     On September 12, 2025, American and Frontier entered into a partial settlement resolving only the costs associated with the repair and physical restoration of the Frontier Aircraft.

22.     The settlement did not resolve or compensate Frontier for its damages arising from the loss of use of the Frontier Aircraft, lost profits, or other operational damages resulting from the incident. Frontier expressly reserved all rights to recover such damages in this action.

23.     Frontier has retained the services of undersigned counsel and Shutts & Bowen LLP and is obligated to pay them their reasonable fees for services rendered in addition to court costs and expenses.

24.     Frontier has satisfied all conditions precent to bringing this action, or such conditions have been waived or excused.

## COUNT I – NEGLIGENCE

25.     Frontier incorporates paragraphs 1 – 24 as if fully set forth herein.

26.     At all material times, American, by and through its employees, agents, servants, contractors, and/or ground handling personnel, conducted and controlled pushback operations for the American Aircraft at Miami International Airport.

27.     American owed Frontier a duty to exercise reasonable care in the operation, control, supervision, and coordination of its aircraft and pushback operations so as to avoid causing damage to other aircraft lawfully present on the ramp.

28.     On March 7, 2024, American, by and through its employees, agents, servants, contractors, and/or ground handling personnel acting within the course and scope of their employment or agency, breached that duty by negligently conducting an out-of-compliance pushback maneuver, which damaged the Frontier Aircraft.

29.    American's acts and omissions constituted negligence. These acts and omissions included, but were not limited to:

    (a)    Executing an out-of-compliance pushback maneuver;

    (b)    Failing to maintain required clearance from the adjacent Frontier Aircraft;

    (c)    Entering a clearly marked aircraft buffer zone;

    (d)    Failing to adequately monitor wing and tail clearances during pushback;

    (e)    Failing to utilize proper spotters, wing walkers, or communication protocols;

    (f)    Failing to adequately train, supervise, and oversee its ramp and pushback personnel; and

    (g)    Failing to comply with accepted ramp safety procedures, airport directives, and industry standards.

30.    At all material times, the acts and omissions described herein were committed by individuals acting as American's employees, agents, servants, and/or contractors within the course and scope of their employment or agency, for whose acts and omissions American is vicariously liable.

31.    As a direct and proximate result of American's negligence, the Frontier Aircraft sustained substantial physical damage, including the total loss and replacement of its vertical stabilizer.

32.    As a further direct and proximate result of American's negligence, Frontier was deprived of the use of the Frontier Aircraft for approximately one hundred eighty (180) days.

33.    Frontier suffered damages including, but not limited to:

    (a)    Repair and restoration costs;

(b)     Loss of use of the Frontier Aircraft;

(c)     Lost revenue and lost profits;

(d)     Continuing lease payments and contractual obligations during the out-of-service period; and

(e)     Operational disruptions and consequential damages.

34.     American and Frontier entered into a partial settlement resolving only the costs associated with the repair and physical restoration of the Frontier Aircraft.

35.     American has failed and refused to pay for the outstanding damages arising from the incident.

WHEREFORE, Plaintiff, FRONTIER AIRLINES INC., respectfully demands judgment for damages in its favor against Defendant, AMERICAN AIRLINES INC., plus interest, costs, and such other relief as this Court deems just and proper.

## COUNT II – GROSS NEGLIGENCE

36.     Frontier incorporates paragraphs 1 – 24 as if fully set forth herein.

37.     At all material times, American, by and through its employees, agents, servants, contractors, and/or ground handling personnel, conducted and controlled pushback operations for the American Aircraft at Miami International Airport.

38.     American owed Frontier a duty to exercise reasonable care in the operation, control, supervision, and coordination of its aircraft and pushback operations so as to avoid causing damage to other aircraft lawfully present on the ramp.

39.     On March 7, 2024, American, by and through its employees, agents, servants, contractors, and/or ground handling personnel acting within the course and scope of their

employment or agency, breached that duty by conducting an out-of-compliance pushback maneuver, which damaged the Frontier Aircraft.

40.     At all material times, American and its ramp personnel were aware of the mandatory safety requirements governing pushback operations at Miami International Airport, including buffer-zone restrictions, wing- and tail-clearance monitoring, and the use of spotters and wing walkers.

41.     Despite this knowledge, American's personnel executed the pushback maneuver in a manner that demonstrated a reckless disregard for the safety of other aircraft, including the Frontier Aircraft, by knowingly entering a clearly marked buffer zone and continuing the maneuver without adequate clearance.

42.     American's personnel proceeded with the pushback despite visible, obvious, and readily apparent hazards, including the proximity of the Frontier Aircraft and the limited alleyway clearance, conditions that made the maneuver unsafe and non-compliant.

43.     American's conduct was not an isolated occurrence. American has been involved in several such incidents at airports across the country. Indeed, in 2024 alone, American was involved in two separate incidents involving Frontier aircraft—the March 7, 2024 collision at Miami International Airport and an earlier incident at Boston Logan International Airport in which an American aircraft made contact with a Frontier aircraft during ground-handling operations.

44.     These prior incidents placed American on notice of systemic deficiencies in its safety practices, training, supervision, and compliance protocols, yet American failed to implement corrective measures, revise procedures, or retrain personnel to prevent recurrence, thereby recklessly allowing this incident to occur.

45.     American's decision to continue operating under these known deficiencies, without implementing corrective action, constituted conscious indifference to the rights and safety of Frontier and other carriers throughout the country.

46.     The pushback maneuver that caused the collision was performed in a manner that no reasonably prudent operator would have undertaken under the same circumstances, and American's conduct demonstrated a gross deviation from accepted ramp-safety standards.

47.     American's acts and omissions constituted gross negligence, reflecting a reckless disregard for the safety of Frontier's aircraft and a conscious indifference to the foreseeable consequences of its conduct.

48.     At all material times, the acts and omissions described herein were committed by individuals acting as American's employees, agents, servants, and/or contractors within the course and scope of their employment or agency, for whose acts and omissions American is vicariously liable.

49.     As a direct and proximate result of American's acts and omissions, the Frontier Aircraft sustained substantial physical damage, including the total loss and replacement of its vertical stabilizer.

50.     As a further direct and proximate result of American's acts and omissions, Frontier was deprived of the use of the Frontier Aircraft for approximately one hundred eighty (180) days.

51.     Frontier suffered damages including, but not limited to:

      (a)     Repair and restoration costs;

      (b)     Loss of use of the Frontier Aircraft;

      (c)     Lost revenue and lost profits;

(d)     Continuing lease payments and contractual obligations during the out-of-service period; and

(e)     Operational disruptions and consequential damages.

52.     American and Frontier entered into a partial settlement resolving only the costs associated with the repair and physical restoration of the Frontier Aircraft.

53.     American has failed and refused to pay for the outstanding damages arising from the incident.

54.     Due to American's gross negligence, Frontier reserves the right to seek leave of Court to amend this Complaint to assert punitive damages pursuant to Section 768.72, Florida Statutes, upon obtaining a reasonable evidentiary basis.

WHEREFORE, Plaintiff, FRONTIER AIRLINES INC., respectfully demands judgment for damages in its favor against Defendant, AMERICAN AIRLINES INC., plus interest, costs, and such other relief as this Court deems just and proper.

## COUNT III – NEGLIGENT TRAINING AND SUPERVISION
### (In the alternative)

55.     Frontier incorporates paragraphs 1 – 24 as if fully set forth herein.

56.     To the extent American's employees, agents, servants, contractors, and/or ground handling personnel were acting outside the course and scope of their employment or agency, Frontier brings this claim in the alternative and alleges that American is directly liable for its negligent training, supervision, and oversight of those individuals.

57.     At all material times, American was responsible for hiring, training, supervising, and overseeing the employees, agents, servants, contractors, and/or ground handling personnel

who conducted ramp operations and pushback procedures for the American Aircraft at Miami International Airport.

58.     American owed Frontier a duty to exercise reasonable care in the training, instruction, supervision, and oversight of its personnel involved in aircraft movement, ramp operations, and pushback procedures so as to prevent unsafe, non-compliant, or hazardous maneuvers that could foreseeably cause harm to other aircraft lawfully present on the ramp.

59.     American knew or, in the exercise of reasonable care, should have known that its personnel were required to comply with airport directives, FAA guidance, industry standards, and established ramp safety procedures governing aircraft pushback operations, wing and tail clearance monitoring, and buffer zone compliance.

60.     American breached its duty by negligently failing to adequately train, instruct, supervise, and oversee its personnel responsible for conducting the pushback of the American Aircraft on March 7, 2024.

61.     American's failures in training and supervision included, but were not limited to:

(a)     Failing to adequately train personnel on proper pushback procedures and clearance requirements;

(b)     Failing to adequately train personnel on the identification, purpose, and mandatory compliance with aircraft buffer zones;

(c)     Failing to adequately train personnel on the use of spotters, wing walkers, and communication protocols during pushback operations;

(d)     Failing to supervise personnel to ensure compliance with airport ramp safety rules and industry standards;

    (e)    Allowing inadequately trained or unqualified personnel to conduct or participate in the pushback maneuver; and

    (f)    Failing to implement or enforce reasonable oversight, monitoring, or corrective measures to prevent unsafe or non-compliant pushback operations.

62.    American's negligent training and supervision created an unreasonable risk of harm and directly and proximately resulted in the improper, out-of-compliance pushback maneuver that caused the American Aircraft to collide with the Frontier Aircraft.

63.    As a direct and proximate result of American's negligent training and supervision, the Frontier Aircraft sustained substantial physical damage, including the total loss and replacement of its vertical stabilizer.

64.    As a further direct and proximate result of American's negligent training and supervision, Frontier was deprived of the use of the Frontier Aircraft for approximately one hundred eighty (180) days.

65.    Frontier suffered damages including, but not limited to:

    (a)    Repair and restoration costs;

    (b)    Loss of use of the Frontier Aircraft;

    (c)    Lost revenue and lost profits;

    (d)    Continuing lease payments and contractual obligations during the out-of-service period; and

    (e)    Operational disruptions and consequential damages.

66.    American and Frontier entered into a partial settlement resolving only the costs associated with the repair and physical restoration of the Frontier Aircraft.

*Plaintiff's Complaint for Damages and Demand for Jury Trial*
Page 13

67.     American has failed and refused to pay for the outstanding damages arising from the incident.

WHEREFORE, Plaintiff, FRONTIER AIRLINES INC., respectfully demands judgment for damages in its favor against Defendant, AMERICAN AIRLINES INC., plus interest, costs, and such other relief as this Court deems just and proper.

<u>REQUEST FOR JURY TRIAL</u>

Plaintiff, FRONTIER AIRLINES INC., hereby demands a trial by jury on all issues so triable.

Dated this December 23, 2025.

/s/   *Aliette D. Rodz*
Aliette D. Rodz
Florida Bar No. 0173592
arodz@shutts.com
Giancarlo Cueto
Florida Bar No. 1031979
gcueto@shutts.com
**SHUTTS & BOWEN LLP**
*Attorneys for Plaintiff*
200 S. Biscayne Boulevard
Suite 4100
Miami, Florida 33131
Tel. (305) 347-7342
Fax (305) 381-9982

Filing # 239112224 E-Filed 01/09/2026 10:25:03 AM

IN THE CIRCUIT COURT OF THE
EIGHTEENTH JUDICIAL CIRCUIT
OF FLORIDA

ADMINISTRATIVE ORDER NO:
**25-08**
SUPERSEDES 24-06 3rd AMENDED

IN RE: CIVIL CASE MANAGEMENT AND IMPLEMENTATION OF CIVIL
DIFFERENTIATED CASE MANAGEMENT

      **WHEREAS**, Chief Justice Charles T. Canady issued AOSC20-23 as amended and as ordered in
Florida Supreme Court No. SC2023-0962 amended December 5, 2024 which provides for case management
of all civil cases and sets forth case management deadlines in each case according to the guidelines provided
herein.

      **WHEREAS**, the *Florida Rules of General Practice and Judicial Administration*, Rule 2.250,
establishes reasonable time standards for the completion of cases in the trial courts.

      **WHEREAS**, the procedures provided herein will improve the Court's ability as required by the
*Florida Rules of General Practice and Judicial Administration*, Rule 2.545, to provide effective, early, and
continuous control of case processing to ensure fair and prompt resolution of disputes consistent with the
nature and complexity of the case.

      **WHEREAS**, the procedures provided herein are intended to assist the participants to proactively
manage time and resources during the litigation process, reduce the need for hearing time, avoid the
unnecessary stress that arises during final trial preparations, and reduce the number of trial cases continued
by identifying known deadlines and expectations.

      **WHEREAS**, the Florida Supreme Court directed the Chief Judge of each circuit to issue an
Administrative Order requiring a Case Management Order to be issued in every applicable civil case to
establish a projected trial date in addition to various deadlines leading up to trial.

      **WHEREAS**, the Florida Supreme Court in No. SC2023-0962 has further amended the *Florida
Rules of Civil Procedure* specifically *Florida Rules of Civil Procedure* 1.200 (Case Management; Pretrial
Procedure), 1.201 (Complex Litigation), 1.280 (General Provisions Governing Discovery), 1.440 (Setting

1

Action for Trial), and 1.460 (Motions to Continue Trial); and in SC2024-0662 regarding changes to 1.510 (Summary Judgment) and 1.202 (Conferral Prior to Filing Motions) effective January 1, 2025.

In accordance with the authority vested in the Chief Judge by Article V, section 2(d) of the *Florida Constitution*; Sections 40.001, 43.26, and 905.01, *Florida Statutes* and *Florida Rules of General Practice and Judicial Administration*, Rule 2.215 and 2.250; and *Florida Rules of Civil Procedure* 1.200, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. This Administrative Order governs all Civil cases filed on or after February 1, 2025, both in Circuit and County Courts that follow the *Florida Rules of Civil Procedure*. However, the following case types are exempt and are not subject to the provisions of this Administrative Order:

    a. Actions required to proceed under §51.011, *Fla. Stat.* (summary procedure);

    b. Actions proceeding under §45.075, *Fla. Stat.*, (expedited trial).

    c. Actions subject to the following rules:

        i. *Florida Family Law Rules*;

        ii. *Florida Small Claims Rules*; unless the court, under rule 7.020 (c), has ordered the action to proceed under one or more of the *Florida Rules of Civil Procedure* and the deadline for the trial date specified in rule 7.090 (d) no longer applies;

    d. an action for review of an administrative proceeding;

    e. eminent domain actions under Article X, §6 *Fla. Const.* or Chapters 73 and 74, *Fla. Stat.*;

    f. Forfeiture cases;

    g. Cases designated as complex cases under *Fla.R.Civ.P.* 1.201;

    h. a petition for habeas corpus or any other proceeding to challenge a criminal conviction or sentence;

    i. An action brought without an attorney by a person in the custody of the United States, a State, or a State subdivision;

    j. An action to enforce or quash an administrative summons or subpoena;

    k. Foreign Judgment cases;

    l. a proceeding ancillary to a proceeding in another court;

    m. an action to enforce an arbitration award;

    n. an action involving an extraordinary writ or remedy under *Fla.R.Civ.P.* 1.630;

    o. all proceedings under Chapter 56, *Fla. Stat.* for Final process; all proceedings under Chapter 415, *Fla. Stat.*, and §§393.12 and 825.1035, *Fla. Stat.* for:

        i. adult protective services,

        ii. capacity cases,

        iii. appointment of guardian advocate;

        iv. Injunction for protection against exploitation of a vulnerable adult;

    p. Approval of minor settlements, §§744.301, 744.387, and 768.23, *Fla. Stat.*

    q. An action or proceeding initiated under Chapters 731-736-738, and 744, *Fla. Stat.*:

        i. Probate;

        ii. Uniform Fiduciary Income and Principal Act;

        iii. Guardianships

2

2. <u>Initial Case Track Designation</u>. Plaintiff shall, at the time of the initial filing of the action, make an initial designation of Case Management Track, on the <u>Civil Case Management Track Designation Form</u> (attached hereto as **"Exhibit A"**) indicating that the case is either Streamlined; General; or Complex based on the definitions outlined below:

    a.  <u>Streamlined Track</u>: will be Circuit Civil Non-Jury (if agreed to), all Foreclosure cases, County Civil Jury and Non-Jury cases, and Small Claims cases where the *Florida Rules of Civil Procedure* have been invoked and will be on track for disposition 12 months after the expiration of the time to perfect service of process under *Fla.R.Civ.P.* 1.070(j) (120 days). *"Streamlined"* cases should have few parties and witnesses; few anticipated pretrial motions, minimal discovery and document production; trial length no more than 3 days. Uncontested cases should generally be presumed to be streamlined cases.

    b.  <u>General Track</u>: will be Circuit Civil Jury cases, Circuit Civil Non-Jury cases and will be on track for disposition 18 months after the expiration of the time to perfect service of process under *Fla.R.Civ.P.* 1.070(j) (120 days). *"General"* cases are all other actions that do not meet the criteria for streamlined or complex.

    c.  <u>Complex cases</u>: will be Circuit Civil Jury cases, Circuit Civil Non-Jury cases and will be on track for disposition 30 months after the expiration of the time to perfect service of process under *Fla.R.Civ.P.* 1.070(j) (120 days). Parties seeking to have a case designated as complex shall initially designate the case as Complex on the <u>Civil Case Management Designation Form</u>, and within 20 days thereafter file an appropriate motion to declare the case complex pursuant to *Fla.R.Civ.P.* 1.201. Until such time the Court issues an order designating the case as complex, the case will proceed as, and the Court will issue, a General Case Management Order.

3. <u>Acceptance of Case Commencement by the Clerk</u>. For all Circuit Civil and County Civil cases subject to this Administrative Order, the Clerk of Court is directed **not to accept the initial case filing in any** case in which the Plaintiff does not submit the completed <u>Civil Case Management Track Designation</u> <u>Form</u> along with the initial filing (complaint, summons, civil cover sheet, etc.). The Clerk of Court shall notify the filer that the action is not being accepted for filing until the completed <u>Civil Case</u> <u>Management Track Designation Form</u> is submitted.

4. <u>Issuance of Case Management Order and Projected Trial Period</u>. After the filing of the <u>Civil Case</u> <u>Management Track Designation Form</u>, the Court will issue its Case Management Order based on the specified track (except cases designated as Complex will be issued an initial General Case Management Order until a motion is filed under *Fla.R.Civ.P* 1.201). The parties will be subject to the Timeframes, Deadlines and Cutoff Dates that will control the management of the case as indicated in **"Exhibit B"** **Streamlined Case Management Order and "Exhibit C" General Case Management Order.** (attached hereto).

5. <u>Issuance of Trial Order and Actual Trial Period</u>. A Trial Order will be issued 120 days prior to the Projected trial date specified in the Case Management Order. The Trial Order will set the Actual Trial Period, the Pre- Trial Conference date, and Direct pre-trial compliance based on the Case Management

Order. Failure of the pleadings to be closed will not preclude the court from setting a case for trial. The Trial Order will provide:

    a.  The trial period;

    b.  The pre-trial conference date and time;

    c.  The timeframe for the parties to meet and exchange of exhibits;

    d.  The pre-trial statement requirements and required filing date;

    e.  Any other trial requirements set forth by the assigned judge.

6.  <u>Deadlines Strictly Enforced</u>. Deadlines in a case management order must be strictly enforced unless changed by court order. Parties may submit an agreed order to extend a deadline if the extension does not affect the ability to comply with the remaining deadlines or the Projected Trial Period in the case management order. If an extension will affect a subsequent deadline or the Projected Trial Period, the Parties may seek amendment of the Case Management Order pursuant to *Fla.R.Civ.P.* 1.200(e)(3). After an Actual Trial Period has been set by the Court; if an extension will affect a subsequent deadline the Parties may seek amendment of the Case Management Order pursuant to *Fla.R.Civ.P.* 1.200(e)(3), provided it does not affect the Actual Trial Period. If an extension will affect the Actual Trial Period, the Parties must seek a continuance of the Actual Trial Period pursuant to *Fla.R.Civ.P.* 1.460.

7.  <u>Motion for Trial</u>. Pursuant to *Florida Rule of Civil Procedure* 1.440, for any case not subject to Rule 1.200 or 1.201; or if either party determines that the case is ready to be tried before the Projected or Actual trial date, a Motion for Trial may be filed, with a copy served on the presiding judge.

8.  <u>Small Claims Cases</u>: Upon entry of an Order invoking the *Florida Rules of Civil Procedure*, the Court will issue a Streamlined Case Management Order.

9.  Judges within the Eighteenth Judicial Circuit are directed to strictly comply with *Fla. R. Gen. Prac. & Jud. Admin.* 2.545(a), (b), and (c), which respectively require judges to conclude litigation as soon as it is reasonable and justly possible to do so, to take charge of all cases at an early stage, and to control the progress of the case thereafter until it is determined, and to apply a firm continuance policy allowing continuances only for good cause shown.

10. This Administrative Order shall be subject to modification, addition, and extension as the evolving and fluid nature of the facts and circumstances may require.

11. This Administrative Order is effective February 1, 2025.

      DONE AND ORDERED on this 23rd day of January, 2025.

                      CHARLIE CRAWFORD
                      CHARLIE CRAWFORD
                      CHIEF JUDGE

Distribution:
All Circuit and County Judges (Brevard and Seminole Counties)
Court Administration (Brevard and Seminole Counties)
Clerk of Court (Brevard and Seminole Counties)
Public Defender (Brevard and Seminole Counties)
State Attorney (Brevard and Seminole Counties)
Sheriff (Brevard and Seminole Counties)
Bar Association (Brevard and Seminole Counties)
Law Library (Brevard and Seminole Counties)

## EXHIBIT A

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR (BREVARD/SEMINOLE) COUNTY, FLORIDA

NETSOURCE, INC.
_____
    Plaintiff,

v.                                  Case No _____

CALL ONE, INC.
_____
    Defendant.

### CIVIL CASE MANAGEMENT TRACK DESIGNATION FORM

I.    **Case Track Assignment** (track must be selected with a "check mark" or "X"): Case disposition times for all case tracks have been established in accordance with Rule 2.250(a)(1)(B), *Florida Rules of General Practice and Judicial Administration*.

        __X__    **Streamlined Track**: Case to be resolved within 12 months after the expiration of the time to perfect service of process under *Fla.R.Civ.P.* 1.070(j) (120 days). *"Streamlined"* cases should have few parties and witnesses, few anticipated pretrial motions, minimal discovery, and document production.

        _____    **General Track**: Case resolved within 18 months after the expiration of the time to perfect service of process under *Fla.R.Civ.P.* 1.070(j) (120 days). "*General*" cases are all other actions that do not meet the criteria for streamlined or complex.

        _____    **Complex Track**: Case to be resolved within 30 months after the expiration of the time to perfect service of process under *Fla.R.Civ.P.* 1.070(j) (120 days). The Court will issue an initial General Track Case Management Order, and thereafter parties shall comply with *Fla.R.Civ.P.* 1.201(a) by filing an appropriate motion to declare the case complex and serving such motion to the assigned judge.

II.    **Trial Information**
- Identification of Jury or Non-Jury Trial:  __X__ **Jury Trial**; _____ **Non-Jury Trial.** •

    Estimated Length of Trial (specify the number of trial days): ___5___ days____.

I CERTIFY that the information I have provided above is accurate to the best of my knowledge and belief, and that I have read and will comply with the Court's current Administrative Order on Case Management.

Signature: _____    Fla. Bar #(if attorney) ___173592___
        Attorney or party

Printed Name: Aliette D. Rodz    Date: ___1/19/26___

6

## EXHIBIT B

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT IN AND FOR
(BREVARD/SEMINOLE) COUNTY, FLORIDA

NETSOURCE, INC.                                                CASE NO:
_____,
            Plaintiff,

VS

CALL ONE, INC.
_____,
            Defendant.
_____/

### INITIAL CASE MANAGEMENT ORDER
### (STREAMLINED TRACK)

THIS CAUSE having come before the Court upon the commencement of this action and to inform the parties of the projected trial period for this matter, and the Court's deadlines and cutoff dates that will control the management of this action pursuant to Administrative Order AO2024-06 4th Amended, and Pursuant to the dictates of Administrative Order AOSC20-23 as amended of the Florida Supreme Court, it is hereby:

ORDERED that the following Projected trial period, pretrial conference date, deadlines and cutoff dates are applicable to this action, and that same will be strictly applied by the Court:

### Case Management Abbreviations[1]

**I.    Projected Trial Period and Pretrial Conference Date***

| | | |
|---|---|---|
| *Not to Exceed 12 months after the date for service of process under 1.070(j).*<br>* To be completed by court based on Track Designation Form | Projected Trial Period: | April 2027<br>(Mo/Day/Yr) |
| | Pre-Trial Conference date: | TBD<br>(Mo/Day/Yr) |
| | Jury Trial or Non-Jury Trial: | Jury |
| | Estimated # of Trial Days: | 5 days<br>Days |
| | *Final Date (Actual Trial Period) will be confirmed by Order Setting: Trial, Pre-Trial Conference, and Directing Pre-Trial Compliance* | |

**II.    Initial Meet/Confer, Discovery Disclosure and Service of Process**

_____

[1] Abbreviations: Plaintiff=PL; Defendant=DF; Case Management Order=CMO; Pretrial Conference-PTC

| | |
|---|---|
| Perfect Service of Process | 120 days after filing complaint or addition of party. |
| Perfect Service of Process under an extension | 60 days after order granting extension. |
| Initial Discovery Disclosure Irrespective if any formal discovery requests are made, each party shall provide the other party(ies) the following initial discovery disclosures unless privileged or protected:<br><br>i) name, address(if known), telephone number and email address for each individual likely to have discoverable information (including the subject matter of that information) that the disclosing party may use to support its claims and defenses;<br>ii) a copy; or description by category and location of all documents, ESI and tangible things that the disclosing party may use to support its claims and defenses;<br>iii) a computation for each category of economic damages claimed by the disclosing party and a copy of any supporting documentation or evidence (for non-economic damages set forth each category and provide supporting documents);<br>iv) a copy of any insurance policy or agreement that may provide coverage indemnification for the disclosing party if found liable for a possible judgment in the action.<br><br>*Unacceptable Excuses:* A party must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures. | 60 days after each Defendant is served.<br><br>*(Notice of Compliance shall be filed 5 days thereafter)* |

III.    **Deadlines and Cutoff Dates[2]**
        **(Calculated as days before Pretrial Conference Date)**

---

[2] When calculating deadlines based on the Pre-Trial Conference date, if the deadline falls on a weekend or holiday, the deadline will be taken as the last business day prior to the deadline date. *E.g.*, if 10 days prior to the Pre-Trial Conference date falls on Saturday, March 13th, the deadline for mediation to be completed would be Friday, March 12th (*not* Monday, March 15th).

| <u>Deadlines and Cutoff Dates</u> | <u>Number of Days</u> <u>before</u> <u>Pretrial Conference</u> |
|---|---|
| 1) Plaintiff and Defendant(s) are to disclose potential fact witnesses (including treating physicians and/or non-retained experts) <br><br> *Exchanged between the parties to facilitate pre-trial discovery, but not filed with the Court. The formal Fact Witness List will be filed in accordance with Para. 9 below.* | 120 days prior to PTC date <br><br> *(Notice of Compliance shall be filed 5 days thereafter)* |
| 2) <u>Filing of Plaintiff Expert Witness List</u> <br><br> Regardless if Defendant propounds expert discovery, Plaintiff will disclose: Names/address; area of expertise; subject matter of expected testimony; substance of facts and opinions; summary of grounds on which opinion is based; and at least 2 available dates for deposition. <br><br> Each party is limited to one expert per specialty. No other expert testimony should be permitted at trial. | 120 days prior to PTC date |
| 3) <u>Filing of Defendant Expert Witness List</u> <br><br> Regardless if Plaintiff propounds expert discovery, Defendant will disclose: Names/address; area of expertise; subject matter of expected testimony; substance of facts and opinions; summary of grounds on which opinion is based; and at least 2 available dates for deposition. <br><br> Each party is limited to one expert per specialty. No other expert testimony should be permitted at trial. | 100 days prior to PTC date |
| 4) Motions to amend pleadings or add new parties to be <u>filed</u> and served | 80 days prior to PTC date |
| 5) Formal identification of *Fabre* Defendants | 80 days prior to PTC date |
| 6) <u>Filing of Plaintiff Rebuttal Expert Witness List (if applicable)</u> <br><br> Regardless if Defendant propounds expert discovery, Plaintiff will disclose: Names/address; area of expertise; subject matter of expected testimony; substance of facts and opinions; summary of grounds on which opinion is based; and at least 2 available dates for deposition. <br><br> Each party is limited to one expert per specialty. No other expert testimony should be permitted at trial. | 80 days prior to PTC date |
| 7) Mediator and Mediation Date <u>agreed to</u> | 80 days prior to PTC date |

| | |
|---|---|
| 8) All CME Rule 1.360 exams completed (counsel should schedule the CME as soon as Plaintiff discloses expert witnesses and not upon approaching this deadline) | 80 days prior to PTC date |
| 9) <u>Filing</u> of Plaintiff and Defendant Fact Witness List and Exhibit List | 60 days prior to PTC date |
| 10) Disclosure of post-accident surveillance to be used at trial<br><br>*Exchanged between the parties to facilitate pre-trial discovery, but not filed with the Court* | 60 days prior to PTC date<br><br>*(Notice of Compliance shall be filed 5 days thereafter)* |
| 11) CME Report prepared and provided to Plaintiff (If Defendant intends to call CME Dr to testify, DF shall provide 3 available depo dates within 10 days after report) | 50 days prior to PTC date |
| 12) All dispositive motions and summary judgment motions <u>filed</u> and served | 55 days prior to PTC date |
| 13) All expert discovery and responses completed by | 45 days prior to PTC date |
| 14) All Daubert motions <u>filed</u> and served | 40 days prior to PTC date |
| 15) Completion of Fact Discovery (including Depositions) | 20 days prior to PTC date |
| 16) All Daubert Motions/Expert Objections noticed and heard (Failure to do so shall constitute a waiver at Trial of any Daubert related evidence objection or issue)<br><br>Responsibility for scheduling the hearing shall be upon the party filing the Motion or Objection. | 20 days prior to PTC date |
| 17) Disclosure of all *Northrup* impeachment materials | 20 days prior to PTC date |
| 18) Plaintiff and Defendant final disclosure of all trial witnesses (Counsel should designate which of previously disclosed witnesses they intend to call at trial)<br><br>*Exchanged between the parties to facilitate trial preparation, but not filed with the Court* | 15 days prior to PTC date<br><br>*(Notice of Compliance shall be filed 5 days thereafter)* |

| | |
|---|---|
| 19) Plaintiff and Defendant disclosure of all trial exhibits (Counsel should designate which of previously disclosed exhibits they intend to use at trial)<br><br>*Exchanged between the parties to facilitate trial preparation, but not filed with the Court* | 15 days prior to PTC date<br><br>*(Notice of Compliance shall be filed 5 days thereafter)* |
| 20) All Motions noticed and heard (except *Daubert* motions, motion for summary judgment, and motions in limine) | 10 days prior to PTC date |
| 21) Plaintiff/Defendant exchange and <u>filing</u> of Notice of Depo Designations | 10 days prior to PTC date |
| 22) All motions for summary judgment heard. (Responsibility for scheduling hearing shall be upon the party filing the Motion or Objection) | 7 days prior to PTC date |
| 23) Plaintiff/Defendant exchange and <u>filing</u> of objections and counter-designations to depo designations | 7 days prior to PTC date |
| 24) Alternative Dispute Resolution Completed | 7 days prior to PTC date |
| 25) Attorney Meet/Exchange/Inspect/Pretrial Stipulation Exchange/examine pre-trial exhibits, discuss settlement; determine stipulated facts and issues; prepare pre-trial statement/stipulation; complete pre-trial checklist and proposed pre-trial conference order; confirm witnesses and contact info; review video depo and exhibits to be used at trial; agree on jury instructions, verdict form, and exhibit logs | 5 days prior to PTC date |
| 26) Plaintiff/Defendant objections to depo designations noticed and heard* | *5 days prior to trial |
| 27) All Motions in limine noticed and heard* | *5 days prior to trial |

**IT IS FURTHER ORDERED** that:

1.    **COMPLIANCE WITH THIS CASE MANAGEMENT ORDER:** The parties shall strictly comply with the terms of this Case Management Order unless otherwise ordered by the Court. FAILURE TO COMPLY WITH ALL REQUIREMENTS OF THIS ORDER WILL RESULT IN THE IMPOSITION OF SANCTIONS.

2.    **ADDITIONAL EIGHTEENTH CIRCUIT AND DIVISION SPECIFIC GUIDELINES:** All counsel and unrepresented parties shall familiarize themselves and comply with the requirements of the following: (i) Amended Administrative Order Establishing the

11

Eighteenth Judicial Circuit Courtroom Decorum Policy (AO 09-06); and (ii) any division-specific guidelines and policies that may be applicable.

3.   **MODIFICATION OF THIS ORDER:** The parties may only alter or extend the deadlines in this Order as follows: Parties may submit an agreed order to extend a deadline if the extension does not affect the ability to comply with the remaining deadlines or the Projected Trial Period in this case management order. If an extension will affect a subsequent deadline or the Projected Trial Period, the Parties may seek amendment of this Case Management Order pursuant to *Fla.R.Civ.P.* 1.200(e)(3). After an Actual Trial Period has been set by the Court; if an extension will affect a subsequent deadline the Parties may seek amendment of this Case Management Order pursuant to *Fla.R.Civ.P.* 1.200(e)(3), *provided it does not affect the Actual Trial Period*. If an extension will affect the Actual Trial Period, the Parties must seek continuance pursuant to *Fla.R.Civ.P.* 1.460

4.   **MOTIONS OR NOTICES FOR TRIAL:** Parties may file a Motion for Trial if they are ready for trial prior to the above-projected trial period or Actual Trial period pursuant to Rule 1.440. The Plaintiff shall forward a copy of the Motion for Trial to the Case Manager at the email address noted on the Eighteenth Judicial Circuit website.

5.   **DISCOVERY:** All counsel and unrepresented parties shall familiarize themselves with each Division's Policies and Procedures, the current edition of the Florida Handbook on Civil Discovery Practice and seek to resolve discovery issues without court intervention whenever possible.

6.   **SERVICE OF THIS ORDER:** Counsel is ordered to promptly serve and file proof with the Clerk, no more than five (5) business days from the date of this Order that all *pro se* parties, subsequently named or appearing herein, have been served copies of this Order. In the event a party is unrepresented and has not designated an email address for purposes of electronic service, counsel for Plaintiff shall be responsible for serving this Order and all future orders of the Court via a non-electronic means (U.S. mail, Federal Express or the equivalent) and shall file a Certificate of Service with the Court indicating who was served, the date of service, and the method of service (including any address or email used) within three (3) business days. If Plaintiff is unrepresented, Counsel for the Defendant shall have this same obligation. If all parties are unrepresented, the Plaintiff shall provide stamped addressed envelopes to the Court with submission of this and any other proposed Order.

      **DONE AND ORDERED** this _____ day of _____, _____, in (Brevard/Seminole) County, Florida.

                                        _____
                                        CIRCUIT JUDGE

*A true and correct copy of the foregoing was distributed to all parties by filing and service via the eportal to all attorney(s)/interested parties identified on the eportal Electronic Service List.*

If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator in your county at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days. If you are hearing or voice impaired, call 711.

13